REINHARDT, Circuit Judge,
with whom
KOZINSKI, Chief Judge, and WARDLAW, Circuit Judge, join, specially concurring:
Although I concur in Judge Clifton’s majority opinion, I write separately to explain the reasons for my hesitation in doing so.
I do not believe that this is an appropriate case in which to establish general principles governing when “substantive unreasonableness” will warrant vacating a sentence imposed by the district court. As the majority opinion states, decisions made under the standard applicable to substantive unreasonableness are “highly contextual and do not permit easy repetition in successive cases.” Majority op. at 1088 (quoting United States v. Rigas, 583 F.3d 108, 123 (2d Cir.2009)). I agree that in substantive unreasonableness cases, as in certain other categories of cases, legal principles developed in one case or set of cases are not easily extrapolated and applied to other cases. The more specific we try to be as to how we must go about determining whether a sentence is substantively unreasonable, the less likely that the rules we adopt will bring us to a *1098 just and fair result in the wide range of cases that will come before us. Here, this principle is at its apex.
No case could be more atypical and less suited for the development of general substantive unreasonableness rules than the case of a foreign enemy terrorist who enters the United States to wage war on this nation. Our general sentencing principles do not easily fit this category of defendant, much less our principles regarding substantive unreasonableness. For example, as the majority opinion correctly states, the “overarching statutory charge for a district court is to ‘impose a sentence sufficient but not greater than necessary’ ” to fulfill certain objectives, one of which is “to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.” Majority op. at 1088-89 (quoting United States v. Carty, 520 F.3d 984, 991 (9th Cir.2008) (en banc) (quoting 18 U.S.C. § 3553(a))). Surely, this objective is wholly inapplicable in the case of a foreign enemy terrorist. Similarly, a significant factor in determining the appropriate length of a sentence for those committing criminal offenses is ordinarily their past criminal history. See id. at 1088-89. What is a reasonable sentence for a first time offender will often be unreasonable for a defendant with a lengthy criminal record, and vice-versa. This is surely not the case with a foreign enemy terrorist. His previous criminal record is wholly irrelevant. Likewise, the need to “afford adequate deterrence” has little relevance in the case of a foreign enemy terrorist: the likelihood that those who seek at the behest of A1 Qaeda or similar groups to damage our country will pay any heed to the length of the sentence they may face is nil.
Nevertheless, we must decide what is a substantively unreasonable sentence in Ressam’s case. Because we do not distinguish in our statutes or guidelines between the length of sentences for ordinary criminals and foreign enemy terrorists, we start with the applicable statutes, which in most cases give the district court a wide amount of discretion. We then apply the Sentencing Guidelines, which although advisory, provide a starting point from which the district court may, in its discretion, vary upwards or downwards after considering the statutes, Guidelines sentencing principles, and applicable Supreme Court and other controlling precedent. In Ressam’s case, however, almost one half of the 22 year sentence imposed by the district court was non-discretionary because Ressam’s conviction under 18 U.S.C. § 844(h)(2) for carrying an explosive in the commission of a felony subjected him to a mandatory consecutive sentence of ten years.
I find very little that would instruct a district court as to how to treat a foreign enemy terrorist other than to apply the terms of the statute under which he is convicted and next to consider the applicable guidelines range. I agree with both parties and the district judge that the extent to which the convicted foreign enemy terrorist has cooperated with and provided assistance to the United States in its war on terror may be a significant factor in reducing what might otherwise be an extremely lengthy sentence to a somewhat lesser one. Here, the defendant’s sentence under the statute and the advisory guidelines would in the absence of such cooperation or other mitigating factors be a minimum of 65 years and a maximum of life in prison.
It appears to me that aside from cooperation with the government there are no other mitigating factors in the case of a foreign enemy terrorist, Ressam or any other. Whether when captured on American soil such foreign nationals should be *1099 sentenced under our general criminal statutes and afforded the same sentencing treatment as domestic criminals or whether their sentencing should be pursuant to special statutes or rules designed to afford particularized treatment to foreign enemies of the state is another matter — a matter for Congress, or possibly in some cases the Executive Branch. As long, however, as courts are required to sentence such defendants under laws and rules applicable to ordinary domestic criminals, there seems to be little about the case of a foreign terrorist that would ordinarily justify less than a guideline sentence, other than his cooperation with the government or possibly a change of heart on his part. Here, the record clearly does not reflect the latter.
I agree with the majority that it is clear that the district court erroneously evaluated the extent of Ressam’s cooperation. In particular, I find that his undermining of the prosecution of Abu Doha, a significant A1 Qaeda figure, and Samir Ait Mohamed, a less important operative, in violation of his cooperation agreement, as well as his repudiation of the agreement itself, served to lessen significantly whatever credit he might otherwise have received for his limited implementation of the agreement. In any event, I would conclude that to the extent that the sentence was reduced substantially on account of his purported cooperation with the government, that reduction was clearly excessive and led directly to a sentence that was substantively unreasonable.
As the majority opinion notes, “[W]e review the substantive reasonableness of a criminal sentence under what the Supreme Court has described as the ‘familiar abuse-of-discretion’ standard of review.” Majority op. at 1086 (quoting Gall v. United States, 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). We have held that a district court abuses its discretion where it fails to “identify] the correct legal rule,” United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir.2009) (en banc), or where, having identified the applicable legal standard, it applies the standard in such a way as to leave us with “the definite and firm conviction that a mistake has been committed,” id. (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).[1]
In the end, in this case the statute and the guidelines leave us with a guideline range of 65 years to life. Treating Ressam’s conviction, as we must, as ordinary criminal offenses rather than as acts of war, the offenses are indeed, as the majority states, “horrific.” Majority op. at 1090. Taking into account a modest reduction for his initial cooperation with the government, I nevertheless have a “definite and firm conviction” that in this case a sentence of 22 years is without support in inferences that may be drawn from facts in the record and, without question, substantively unreasonable. In fact, treating the offense as ordinary criminal conduct, as I must, my definite and firm conviction would be that any sentence lower than one within the guideline range would meet that description.
An abuse of discretion standard is, as the majority opinion acknowledges, not always “clear or simple to apply.” Majority op. at 1086. This is especially true in determining when we are left with “a definite and firm conviction” that the district *1100 court committed a clear error of judgment. Here, however, I have no difficulty in concluding without any reservation that under our ordinary criminal law the offense of which Ressam was convicted, specifically his participating in the conspiracy to blow up the Los Angeles International Airport on New Year’s Day of the year 2000, and to murder hundreds or thousands of travelers and workers so as to create a state of chaos nationwide if not worldwide, mandates a sentence no less than that within the guideline range of 65 years to life.
In short, I concur generally with the majority and agree that the 22 year sentence must be vacated as substantively unreasonable, given that we are compelled to treat a foreign enemy terrorist in the same manner as we would a domestic criminal. What sentence I might otherwise find reasonable or unreasonable for a foreign enemy terrorist is of no import here and is a question that I am glad that I do not have to answer. Acts of war are indeed different from ordinary crimes, and our current war with terrorism is indeed different from ordinary wars. I am far from certain that our government or our citizens have yet determined how to deal with these differences.[2]
Although I am concerned that a district judge might ordinarily have difficulty on remand in viewing this matter afresh given the sentencing history in this case, the district judge here is a dedicated, experienced and highly respected jurist who is fully capable of completing the assignment with which he has so dutifully struggled for the past 12 years. Accordingly, I, like the majority, would not remand to another judge.

. Indeed, both Congress and the Executive Branch continue to be engaged in determining how foreign enemy terrorists should be treated. See, e.g., Statement by the President on H.R. 1540 (Dec. 31, 2011), available at http://www.whitehouse.gov/the-press-office/ 2011/12/31/statementpresident-hr-l 540.